UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER SANCHEZ,

     Plaintiff,

v.                                                  CASE NO. 3:22-cv-1422-MCR

COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

     Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an unfavorable decision denying his application for a period of disability and disability insurance benefits ("DIB"). Following an administrative hearing held on January 27, 2022, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from August 1, 2019, the alleged disability onset date, through March 2, 2022, the date of the ALJ's decision.[2] (Tr. 16-61.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED AND REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 11.)

[2] Plaintiff had to establish disability on or before September 30, 2024, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 18.)

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); accord *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

### A.    Issues on Appeal

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ's reasons for rejecting his testimony are not supported by substantial evidence.  (Doc. 13. at 15-22.)  To support this claim, Plaintiff argues there are several issues with the ALJ's findings.  As an initial matter, Plaintiff argues that there were discrepancies with the ALJ's analysis of the medical imaging.  (*Id.* at 17.)  Although the ALJ determined that the medical imaging was inconsistent with Plaintiff's testimony, Plaintiff contends that most of the imaging that the ALJ mentioned contained abnormal findings, which would support Plaintiff's subjective complaints.  (*Id.*)  To illustrate, Plaintiff cites the following:

> An x-ray of Plaintiff's lumbar spine revealed that he had degenerative disc disease at L3-L4 as well as prior surgical changes. (Tr. 369). In October of 2020, an electromyogram revealed that Plaintiff had right-sided lumbar polyradiculopathy. (Tr. 853-54). An MRI of Plaintiff's left foot revealed fractures in his third and fourth metatarsal joints. (Tr. 843). In addition, an MRI of Plaintiff's right lower extremity showed degenerative changes and edema. (Tr. 762). Plaintiff's lumbar radiculopathy and the degenerative changes in his lower extremities support his testimony that he is unable to walk for prolonged distances and that he cannot sit for more than 20 to 40 minutes. (Tr. 45-46).

(*Id.*)  Furthermore, "the ALJ did not meaningfully explain how all this imaging contradicted Plaintiff's testimony about his pain." (*Id.*)

Plaintiff posits a similar argument with regard to the ALJ's assertion that the bulk of physical, musculoskeletal, and neurological exams have been "generally unremarkable." (*Id.*; Tr. 26-27.) Again, Plaintiff cites to the record to support his claim, explaining that:

> Plaintiff usually presented with an antalgic or mildly antalgic gait. (Tr. 882, 922, 1113, 1121, 1129, 1134, 1138, 1148, 1154, 1179). In addition, Plaintiff had tenderness and a limited range of motion in his lumbar spine. (Tr. 378, 616, 699, 713, 760, 880, 967, 1113, 1121, 1129, 1134, 1138, 1148, 1154). Neurological examinations revealed that Plaintiff had diminished sensation, 4/5 motor strength in his anterior tibialis muscles and 4-/5 strength in his gastrocnemius and extensor hallucis longus muscles. (Tr. 378, 616, 713, 880, 967).

(Doc. 13. at 18.)  In light of these alleged discrepancies, Plaintiff avers:

> This evidence corroborates Plaintiff's testimony that he must use an assistive device when standing and that he cannot sit for more than 20 to 40 minutes at one time. (Tr. 44-46). Since many of the musculoskeletal and the neurological examinations were abnormal, the ALJ erred in concluding that those exams were "generally unremarkable." (Tr. 26-27).

(*Id.*)

Next, Plaintiff argues that the record contradicts the ALJ's assertion that he has received rather conservative treatment for his pain. (*Id.*) Plaintiff offers the following in support of this argument:

> Plaintiff had a significant lumbar spine surgery in July of 2020 and surgery on his right ankle in February of 2021. (Tr. 377, 927-28). At the time of the hearing, Plaintiff was considering another surgery involving a spinal column stimulator. (Tr. 985). Surgical procedures are aggressive, rather than conservative, treatment. *See, e.g., Hannah v. Soc. Sec. Admin, Comm'r*, Case No. 6:21-cv-

938-HNJ, 2022 WL 4236630, at *5 (N.D. Ala. Sep. 14, 2022) (finding that physician's recommendation of surgery contradicted the ALJ's finding that no doctor advised aggressive treatment); *June H. v. Comm'r of Soc. Sec. Admin.*, Case No. 2:19-cv-272-JCF, 2021 WL 9772300, at *5-6 (N.D. Ga. Mar. 12, 2021) (ruling that ALJ erred in finding that the claimant had "relatively conservative" treatment because the treatment notes show that the claimant had several surgeries). In addition, the medical evidence reveals that Plaintiff has received strong pain medications such as oxycodone. (Tr. 1113, 1122, 1132, 1135, 1139-40, 1155). The Eleventh Circuit has noted that the use of such medications is inconsistent with conservative treatment. *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 n.2 (11th Cir. 2015) (agreeing with Magistrate Judge's ruling that the claimant's use of tramadol, a narcotic-like medication, contradicted the ALJ's finding that the claimant's treatment was conservative). Contrary to what the ALJ asserted, the overall evidence shows that Plaintiff's physicians have recommended aggressive treatments for his pain.

(*Id.* at 19-20.)

Plaintiff offers comparable arguments with regard to the ALJ's finding that his conditions have been "managed fairly well." (*Id.* at 20.) Here, Plaintiff explains:

Records from the Jacksonville Spine & Pain Center show that Plaintiff's pain ranged from a five to a ten out of ten despite his prior lumbar surgeries and his use of strong medications such as oxycodone. (Tr. 1112, 1120, 1128, 1138, 1148). Plaintiff's physical therapy records showed that his pain levels varied over time but were sometimes as high as a seven or eight out of ten. (Tr. 1199, 1209, 1234, 1240, 1281, 1286). The most recent treatment notes show that Plaintiff's neurosurgeon, Dr. Chahlavi [,] discussed a spinal column stimulator surgery. (Tr. 985). The doctor would not have recommended that form of treatment if Plaintiff's medications and prior surgeries had been effective in relieving his pain.

(*Id*.)  Plaintiff also contends that:

> [T]he record does not support the ALJ's assertion that Plaintiff
> has been noncompliant with treatment. The discharge notes from
> Brooks Rehabilitation state that Plaintiff had not returned for his
> last visit, but it also states that Plaintiff was being discharged
> because he had completed the treatment program, and that
> further skilled therapeutic intervention was not recommended at
> that time. (Tr. 1352). So, it appears that Plaintiff did successfully
> complete his course of physical therapy, even though he did not
> attend every scheduled visit.

(*Id*.)  Against this backdrop, Plaintiff explains that "the ALJ did not

ask Plaintiff why he did not attend all his scheduled physical therapy

sessions. Because the ALJ did not fully develop the facts regarding

Plaintiff's alleged noncompliance with treatment, this case should be

remanded for a new hearing." (*Id*. at 21.)

Finally, Plaintiff argues that his "daily activities support a finding that

he would not be able to complete a full eight-hour workday." (*Id*.)  This is

based on his wife's assistance with his personal care activities such as

bathing and dressing and his incapacity to perform household chores such as

cooking.  Ultimately, Plaintiff avers that his "inability to perform even

simple, routine activities without special assistance shows that he would not

be able to perform work activities for eight hours per day or five days per

week." (*Id*. at 21-22.)

In Plaintiff's second broader argument, he claims that the ALJ did not

adequately evaluate the opinion of consultative examiner Dr. Adejuyigbe

Adaralegbe.  (*Id*. at 22.)  More specifically, Plaintiff contends that "[t]he ALJ did not explain . . . whether he was adopting or rejecting Dr. Adaralegbe's opinion that Plaintiff can only occasionally sit during an eight-hour workday."  (*Id*. at 24.)  Moreover, the "ALJ's [Residual Functional Capacity] assessment does not include a limitation to occasional sitting; rather, the ALJ found that Plaintiff could perform sedentary work, with [sic] requires sitting for up to six hours in an eight-hour workday."  (*Id*.) Furthermore, "the ALJ did not explain why he did not adopt Dr. Adaralegbe's finding that Plaintiff can only occasionally sit during an 8-hour workday. Therefore, the ALJ's decision does not comply with SSR 96-8p."  (*Id*.)

In response to Plaintiff's first claim, Defendant contends that despite Plaintiff's representations, substantial evidence supports the ALJ's evaluation of Plaintiff's RFC and subjective complaints.  (Doc. 15 at 5.)  For support, Defendant claims that the ALJ applied the proper standard:

> when he found that, while Plaintiff's conditions could reasonably be expected to produce the alleged symptoms, Plaintiff's subjective allegations were inconsistent with the objective medical evidence with many unremarkable findings, Plaintiff's rather conservative treatment (surgical intervention followed by physical therapy and medication management), the effectiveness of treatment, the lack of medication side effects, noncompliance with treatment, the prior administrative medical findings, and Dr. Adaralegbe's opinion. Plaintiff admits that the ALJ considered several factors in the subjective symptom analysis, but still offers his own analysis of the medical evidence to counter the ALJ's "rejection" of his complaints.

(*Id.* at 8 (internal citations omitted).)  Defendant further assets:

> Plaintiff points to his own subjective allegations and select findings from examinations that the ALJ cited and discussed to contend that the ALJ did not adequately consider the evidence. Plaintiff's argument is nothing more than a request for this Court to play the role of [an] ALJ by reweighing the record evidence to find he was further limited than the ALJ assessed. To grant the remedy Plaintiff seeks, the Court would have to credit his evidence despite contrary evidence in the record that undermined his claim. The ALJ carefully considered the entire record and provided substantial evidence supporting his assessment of Plaintiff's subjective allegations and RFC. This Court should thus reject Plaintiff's invitation to reweigh the evidence and instead affirm the ALJ's decision.

(*Id.* at 13 (internal citations omitted).)

As to Plaintiff's second broader argument, Defendant claims that the "ALJ properly evaluated the persuasiveness of the opinion evidence." (*Id.* at 14.)  Specifically, Defendant claims that the ALJ reasonably found that Dr. Adaralegbe's opinion supported a finding that Plaintiff could perform some sedentary work within his RFC assessment. (*Id.*)  To support this contention Defendant further argues that:

> Here, contrary to Plaintiff's argument that the ALJ erred by not mirroring his opinion, the ALJ properly discussed Dr. Adaralegbe's opinion and explained why he found it "somewhat persuasive." The ALJ noted that, on January 31, 2022, Dr. Adaralegbe opined that Plaintiff could occasionally sit, stand, and walk, and lift/carry 10 pounds. The ALJ found the assessed limitations were "somewhat vague," but pointed out that they were generally consistent with an RFC for a reduced range of light work. Again, here, the ALJ assessed a more restrictive RFC for a reduced range of sedentary work. If a claimant can perform light work, he can also perform sedentary work. Because Dr.

8

Adaralegbe's opinion supports the ALJ's RFC assessment and final decision, Plaintiff's reliance on the doctor's opinion to show reversible error is misplaced.

(*Id*. at 14-15 (internal citations omitted).)

## B. Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinions, the rules in 20 C.F.R. § 404.1520c apply to claims filed on or after March 27, 2017.[3] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised rules and regulations in effect at the time of the ALJ's decision.

Under the revised rules and regulations, the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ will articulate in the administrative decision how persuasive all of the medical opinions are in the case record, 20 C.F.R. § 404.1520c(b), but need not articulate how evidence

---

[3] The rules in 20 C.F.R. § 404.1527 apply to claims filed before March 27, 2017.

from non-medical sources has been considered, 20 C.F.R. § 404.1520c(d).

"When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. §§ 404.1520c(c)(1) through (c)(5), as appropriate.  20 C.F.R. §§ 404.1520c(a), (b)(1).  The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

When evaluating the persuasiveness of medical opinions, the most important factors are supportability  and consistency.   20 C.F.R. §§ 404.1520c(a), (b)(2).  Thus, the ALJ "will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c).  20 C.F.R. § 404.1520c(b)(2).  As explained recently by another court in this District:

> Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  In other words, the ALJ's analysis is directed to whether the medical source's opinion is *supported* by the source's own records and *consistent* with the other evidence of record—familiar concepts within the framework of social security litigation.

*Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832,

10

*3 (M.D. Fla. Apr. 6, 2021) (emphasis in original) (report and recommendation adopted by 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)). When "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ will articulate how he/she considered the other most persuasive factors listed in 20 C.F.R. §§ 404.1520c(c)(3) through (c)(5), which include a medical source's relationship with the claimant,[4] specialization, and other factors.   20 C.F.R. § 404.1520c(b)(3).

When a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  "If the ALJ decides not to credit such testimony, he [or she] must articulate explicit and adequate reasons for doing so." *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

---

[4] The relationship with the claimant factor combines consideration of the following issues: the length of the treatment relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship.  20 C.F.R. §§ 404.1520c(c)(3)(i)-(v).

Once a claimant establishes that her subjective symptom is disabling through "objective medical evidence from an acceptable medical source that shows . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms," pursuant to 20 C.F.R. § 404.1529(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561.  *See also* SSR 16-3p[5] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
> . . .
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have

_____

[5] SSR 16-3p rescinded and superseded SSR 96-7p, effective March 28, 2016, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p.

been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent."  It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[6]  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.
. . .
In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to

---

[6] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

### C.    The VE's Hearing Testimony

On January 27, 2022, Vocational Expert ("VE") Susan Green, appeared for a telephonic hearing before ALJ Gregory Froehlich.  (Tr. 56–60.)  During the hypothetical questioning by the ALJ, the VE testified in relevant part as follows:

> Q. . . And for the first hypothetical, we start with an individual of the Claimant's age, education, the past work that you've indicated, [an] individual limited to work at the sedentary exertional level with occasional postural activities, climb[ing], balanc[ing], stoop[ing], knee[ling], crouch[ing], and crawl[ing]. They should not have concentrated exposure to vibrations and they should not work around moving mechanical parts, or at unprotected heights. Would the individual be able to do the past work?
>
> A No, Your Honor.
>
> Q Okay. And would there be other positions that the individual would be able to perform?
>
> A Yes, you Honor. First is a document preparer. DOT Code 249.587-018. It has an SVP: 2, unskilled, is classified at the sedentary level. There are approximately 19,000 positions in the United States. Next is a weight tester, DOT Code 539.485-010. It has an SVP: 2, unskilled. It is classified at the sedentary level. There are approximately 12,000 jobs in the United States. And last is a telephone quotation clerk. . . DOT Code 237.367-046. It has an SVP: 2, unskilled. It is classified at the sedentary level. There are approximately 3, 000 positions in the United States.
>
> Q Now for the second hypothetical, if we were to take the individual from the first, but they would also be expected to be off task during the work day, for at least 20 percent of the work day.

That would be at unpredictable intervals and outside normally permitted breaks. What affect would that have on the job incidences?

A That would preclude all work.

(Tr. 56-58.)

After the ALJ finished his questioning of Ms. Green, Plaintiff's attorney asked an additional question:

Q. . . If we were to take the first hypothetical individual, but we added this person can sit for two [out] of eight [hours], they can stand and walk for two out of eight [hours], [and] they can have no foot controls with the bilateral lower extremities. This person needs a hand-held device for ambulation, balance, support, and stability. This person should never climb ladders, ropes, and scaffolds. They should less than occasionally climb stairs, [and] occasionally climb ramps.

They can occasionally balance, but they can never perform stooping, kneeling, crouching and crawling. This person has limited use of their right, dominant upper extremity, for reaching in all direction. This person could less than occasionally do so. This person could less than occasionally handle, finger, and feel with the bilateral upper extremity. Would this person be able to perform the past work or the jobs that you listed?

A No. This would preclude all work.

(Tr. 60.)

### D.    The ALJ's Decision

At step two of the sequential evaluation process,[7] the ALJ found that

Plaintiff had the following severe impairments: degenerative disc disease

---

[7] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

(DDD), right foot drop, dysfunction of major joints, complex regional pain syndrome in the right lower extremity, obesity, and stage three kidney disease.  (Tr. 18.)   At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) "except with occasional postural activities (climb[ing], balanc[ing], stoop[ing], [k]neel[ing], crouch[ing,] and crawl[ing]) and no concentrated exposure to vibrations, work around moving mechanical parts, or work at unprotected heights."  (Tr. 21.)

In making these findings, the ALJ discussed the evidence of record. (Tr. 21-29.)  The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 26.)

Then, at the fifth and final step of the sequential evaluation process, the ALJ found that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of

Occupational Titles (DOT)." (Tr. 31.) Additionally, the ALJ determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (*Id.*) The ALJ listed three representative jobs:

> (1) Document preparer (DOT 249.587-018), which is considered sedentary work, with an SVP rating of two, and of which there are approximately 19,000 jobs nationwide;
> (2) Weight tester (DOT 539.485-010), which is considered sedentary work, with an SVP rating of two and of which there are approximately 12,000 jobs nationwide; and
> (3) Telephone quotation clerk (DOT 237.367-046), which is sedentary work, with an SVP rating of two and of which there are approximately 3,000 jobs nationwide.

(*Id.*)

## III.  Analysis

The Court reviewed Dr. Adaralegbe's records and opinions carefully and finds the ALJ failed to build a logical bridge between the record evidence and his conclusion that Plaintiff could perform sedentary work. Therefore, this case is due to be reversed and remanded. *See Crecelius v. Comm'r of Soc. Sec.*, No: 2:17-cv-320-FtM-99CM, 2018 WL 4042856, at *2 (M.D. Fla. Aug. 24, 2018).

In reviewing the medical evidence of record the ALJ expressly considered the opinion of Dr. Adaralegbe and noted that Dr. Adaralegbe opined that Plaintiff could lift/carry 10 pounds occasionally on either side. (Tr. 29.) Dr. Adaraledgbe also opined that Plaintiff could only occasionally sit, stand, and walk. (*Id.*) The ALJ explained that he found Dr. Adaralegbe's

opinion "somewhat persuasive." (*Id*.) The ALJ further stated that:

> Although somewhat vague limitations [were] given, they
> are generally consistent with a reduced range of light work,
> particularly in light of the noted cervical and lumbar related
> issues, antalgic gait as related to the claimant's DDD,
> neuropathy and complex regional pain syndrome related to his
> right lower extremity. In addition, the claimant testified that he
> could generally lift/carry 10 pounds. This opinion is not entirely
> consistent with the opinion at Exhibit 1A but generally consistent
> with the opinion at Exhibit 4A.
> (Tr. 29.)

As a general matter, a job considered to be light work "requires a good

deal of walking or standing." 20 C.F.R. § 416.967(b). By contrast,

"occasionally" means "occurring from very little up to one-third of the

[workday]." S.S.R. 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Thus, on its

face, the ALJ's evaluation appears internally inconsistent, insofar as he

interprets Dr. Adaralegbe's opinion that Plaintiff can only stand and walk

"occasionally" to conclude that he can also perform the ordinary demands of a

"reduced range of light work." *See Bailey v. Comm'r of Soc. Sec.,* No.

618CV1518ORL37LRH, 2019 WL 2425303, at *4 (M.D. Fla. May 23, 2019)

(report and recommendation adopted, 2019 WL 2423422 (M.D. Fla. June 10,

2019)); *see also White v. O'Malley*, No. 3:22-cv-1051-JRK, 2024 WL 550454, at

*5 (M.D. Fla. Feb. 12, 2024).

Defendant seems to contend that this error is harmless, because the

ALJ assigned a more restrictive RFC than light work, by limiting Plaintiff to

sedentary work.  However, as Plaintiff notes, Dr. Adaralegbe also limited
Plaintiff to occasional sitting.  The regulations provide that "[i]n order to
perform a full range of sedentary work, an individual must be able to remain
in a seated position for approximately 6 hours of an 8-hour workday."  S.S.R.
96-9p, 1996 WL 374185, at *6 (July 2, 1996).  Again, by contrast,
"occasionally" means "occurring from very little up to one-third of the
[workday]."  S.S.R. 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).  As a result,
"sedentary work generally involves sitting more than occasionally."  *Lane v.
Astrue*, 267 F.R.D. 76, 85 (W.D.N.Y. 2010).

    With this in mind, Defendant's argument regarding the ALJ's adoption
of a more restrictive RFC of sedentary work does not remedy the issue.  *See
Alberto C. v. Comm'r of Soc. Sec.*, No. 20-cv-01763-MJR, 2022 WL 4471927, at
*4 (W.D.N.Y. Sept. 26, 2022) ("The ALJ's conclusion that the Plaintiff can
perform sedentary work appears on its face to be inconsistent with Dr. Toor's
opinion that the Plaintiff has a moderate limitation for prolonged sitting. In
other words, it appears counterintuitive that a claimant with a moderate
limitation for prolonged sitting could perform sedentary work.").  Ultimately,
the ALJ offered no analysis addressing this apparent inconsistency, which
frustrates the Court's review.  *See Cassandra H. v. Comm'r of Soc. Sec.*, No.
6:20-cv-6776-EAW, 2022 WL 17037628, at *3 (W.D.N.Y. Nov. 17, 2022)
("Even though the ALJ found the opinion to be consist[ent] with the record,

he did not make a logical connection between Plaintiff's moderate limitations in sitting, standing, and walking, and the postural requirements of sedentary work, and, instead, simply concluded that Plaintiff's limitations were consistent with sedentary work. That alone, without any further explanation, was improper.")

While Defendant is correct that the ALJ is not required to adopt every piece of evidence—he is not absolved of his responsibility to build an accurate and logical bridge from the evidence to his conclusion.   Furthermore, the necessity of sound analysis is compounded, when, as here, a claimant is assessed not only with a sitting limitation, but also with limitations for standing and walking, because a finding of sedentary work may indeed be precluded.  *See, e.g., Steven C. v. Comm'r of Soc. Sec.*, No. 6:20-cv-06596 EAW, 2022 WL 855000, at *6 (W.D.N.Y. Mar. 22, 2022) (stating that "moderate to severe limitations for standing and walking which, coupled with the sitting limitation, are not consistent with an RFC requiring plaintiff to perform sedentary work").  Upon review, the ALJ failed to analyze how Plaintiff's limitation in sitting could impact his ability to sit for six hours, and to consider Plaintiff's limitations in standing or walking to determine whether he was able to stand or walk for two hours in an eight-hour workday required for sedentary work.  This constitutes reversible error, particularly in light of the VE's testimony that limitations in sitting, standing, and walking

may be work preclusive.  (*See* Tr. 60.)

Notably, courts faced with similar circumstances have also found remand appropriate.  *See e.g., Luis R. v. Comm'r of Soc. Sec.*, No. 20-cv-6257-FPG, 2021 WL 3615703, at *4 (W.D.N.Y. Aug. 16, 2021) (remanding case where the ALJ failed to explain how the opinion that plaintiff had moderate limitation in prolonged sitting translated into the ALJ's conclusion that plaintiff could sit for six hours); *Toomey v. Colvin*, 15-cv-730-FPG, 2016 WL 3766426, at *4 (W.D.N.Y. Aug. 3, 2016) (remanding case where the ALJ failed to reconcile his finding that plaintiff could perform sedentary work with a medical opinion that she was moderately limited in sitting for a long time).

In light of this conclusion, it is unnecessary to address Plaintiff's remaining arguments on appeal.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).  However, since on remand the ALJ would be reconsidering Plaintiff's RFC assessment, the ALJ should also reevaluate Plaintiff's subjective complaints and conduct any further proceedings deemed appropriate.

Accordingly, it is **ORDERED**:

1.    The Commissioner's decision is **REVERSED and REMANDED**

pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to reconsider the RFC assessment and conduct any further proceedings deemed appropriate.

2.      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.      The judgment should state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney's fees under 42 U.S.C. § 406(b) and/or 42 U.S.C. § 1383(d)(2) must be filed within fourteen (14) days from plaintiff's counsel's receipt of any "close-out" letter.  The motion must include the agency letter stating the amount of past-due benefits withheld, include any applicable contingency fee agreement, and establish the fee is reasonable for the services rendered.  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on March 19, 2024.


MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record